# United States Court of Appeals
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

February 12, 2024

Mr. Tony R. Moore
Western District of Louisiana, Lake Charles
United States District Court
300 Fannin Street
Suite 1167
Shreveport, LA 71101-0000

  No. 23-30072  Sugartown Untd v. Church Mtl Ins
          USDC No. 2:21-CV-1672

Dear Mr. Moore,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

Enclosed for the district court and counsel is the approved bill of costs.

          Sincerely,

          LYLE W. CAYCE, Clerk

          By: _____
          Majella A. Sutton, Deputy Clerk
          504-310-7680

cc:
  Mr. Travis Louis Bourgeois
  Mr. Derek Clinton Brasher
  Mr. Sidney W. Degan III
  Mr. Jeremy Gaston
  Mrs. Nishi Kothari
  Mr. Daniel A. Webb

# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
January 5, 2024
Lyle W. Cayce
Clerk

**Certified as a true copy and issued as the mandate on Feb 12, 2024**

Attest: *Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

No. 23-30072

_____

SUGARTOWN UNITED PENTECOSTAL CHURCH INCORPORATED,

*Plaintiff—Appellee,*

versus

CHURCH MUTUAL INSURANCE COMPANY,

*Defendant—Appellant.*

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:21-CV-1672

_____

Before HIGGINBOTHAM, HIGGINSON, and DUNCAN, *Circuit Judges.*

J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.

IT IS FURTHER ORDERED that Appellant pay to Appellee the costs on appeal to be taxed by the Clerk of this Court.

# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
January 5, 2024
Lyle W. Cayce
Clerk

No. 23-30072

SUGARTOWN UNITED PENTECOSTAL CHURCH INCORPORATED,

*Plaintiff—Appellee*,

versus

CHURCH MUTUAL INSURANCE COMPANY,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:21-CV-1672

Before HIGGINBOTHAM, HIGGINSON, and DUNCAN, *Circuit Judges*.

PER CURIAM:[*]

  A jury found that Church Mutual Insurance Co. ("CM") underpaid its insured, Sugartown United Pentecostal Church ("Sugartown"), for property damage caused by Hurricane Laura. The jury also found that CM acted in bad faith. The district court awarded $502,172.16 in damages, penalties, and fees. CM now argues that the court abused its discretion in

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

various rulings and that the verdict was supported by insufficient evidence. Finding no reversible error on either front, we AFFIRM.

I.

A.

Sugartown's church building is located in Dry Creek, Louisiana. During a 2016 renovation, the church installed a new Heating, Ventilation, and Air Conditioning ("HVAC") unit, new paneling and insulation, and a new roof. In January 2020, an appraiser, Blake Lopresto, inspected all interior rooms, the exterior, the roof, and interior and exterior HVAC units, finding no structural problems. The only evidence of water damage was a few off-colored ceiling tiles in one room, which Lopresto did not think indicated an HVAC issue. Later that month, after finding the building and roof to be in "good" condition, CM issued Sugartown a three-year insurance policy for $363,000.

On August 27, 2020, Hurricane Laura damaged the building. Sugartown's pastor, Timothy Deason, informed CM about the damage by September 14, 2020. Three days later, CM assigned the claim to Engle Martin & Associates, LLC, to inspect and prepare an estimate. Engle Martin's Steve Montano visited the site on September 23, 2020. At Deason's instruction, Montano inspected the property alone with no church representative present to help assess the damages.

Montano inspected the church's exterior, the roof, and all unlocked interior portions. But he could not access some rooms or the attic. Montano said that it was raining during the inspection and he did not see any leaking through the roof. He did not take moisture readings, properly measure the roof, nor obtain an external roof measurement report. He did identify minor wind damage to the roof and carport, as well as some interior water damage covered by the policy.

No. 23-30072

On September 25, 2020, Montano submitted an "initial loss" estimate to CM. He submitted a final report to CM on October 22, 2020, estimating all covered losses at $14,857. Applying a $10,000 deductible, Montano recommended payment for $4,857. He identified only "minor damage to the metal roof" and did not consider any interior damage beyond damage in "the large assembly room." One of Sugartown's contractors disputed the amount of interior damage and offered to send Montano "moisture reporting for the entire building." But Montano informed the contractor he would not consider any "leaking in the rear of the building . . . as there was no roof damage, (or storm created openings), to the exterior of these areas." Based on Montano's final report, CM paid Sugartown $4,138.78[1] on November 16, 2020—52 days after CM received Montano's initial estimate and 25 days after his final report.

Sugartown hired its own engineers, cost estimators, and moisture experts to inspect the property. In May 2021, Sugartown sent proof of loss reports to CM. They claimed damages about $229,000 above Montano's estimate. Sugartown claimed CM "had 'satisfactory proof of loss,' as that term is understood under Louisiana law, the date [Montano] conducted [his] inspection of the damaged property."

In response, CM retained construction, engineering, and architecture experts to investigate Sugartown's excess damages request. They found that Sugartown's request was unsubstantiated and that the church sustained only $8,501.74 in hurricane damages. Summarizing their findings, CM stated that the interior water damage was not caused by Hurricane Laura nor any roof leak or puncture. Rather, "interior water damage [was] due to elevated moisture levels and widespread condensation issues associated with the

---

[1] This figure excluded $718.22 in damage to the carport as not covered.

HVAC system, which is located in the attic space." The other "storm damages" claimed by Sugartown were preexisting defects not covered under the policy.

B.

On June 16, 2021, Sugartown sued CM for breach of contract in federal court based on diversity jurisdiction.

At trial, Sugartown's case-in-chief highlighted the inadequacies of CM's inspections and the extent of its damages. Sugartown presented eight witnesses, including experts in insurance industry practices and in civil and structural engineering. For instance, Charles Bunn—an expert in insurance cost estimation and damage causation who inspected the church in May 2021—estimated the replacement cost under the policy at $263,581.69 and the "Actual Cash Value" ("ACV") of those repairs at $239,565.51. Sugartown also called Montano to testify about his initial inspection, his estimate of $14,857, and CM's eventual payment of $4,138.78. Sugartown's witness Phil Spotts, an expert in insurance claims handling and property underwriting, testified that Montano's inspection was neither thorough nor within industry standards.

During Sugartown's case-in-chief, the parties disputed whether damages should be calculated according to the property's ACV at the time of Hurricane Laura (August 2020) or according to the current repair cost. During Bunn's testimony, the court sustained Sugartown's objection to a line of inquiry suggesting the policy unambiguously applied ACV at the time of loss. The court ruled that, given the policy's "conflicting definitions" of ACV, this would confuse the jury.

CM's case-in-chief sought to defend its handling of Sugartown's claim and to portray the church's interior water damage as caused by a faulty HVAC system, not Hurricane Laura. In particular, Guy Gonzalez, an

architecture expert, testified that Sugartown's HVAC system was "one of the worst leaking air conditioners because of condensation that [he] ha[d] seen," and that it was "basically . . . raining inside the building." Gonzalez also testified that an exterior HVAC unit had been dislodged because it was set the wrong way, not because of Hurricane Laura.

After the defense rested, Sugartown announced it would call Ryan Daigle to rebut Gonzalez's testimony. Daigle, a certified HVAC technician, had maintained the church's systems. CM objected because Daigle had not been identified in Sugartown's Rule 26 disclosure or its pretrial statement. The court overruled CM's objection. Daigle testified that he serviced the HVAC units after the 2016 remodel and before Hurricane Laura, and that they were working perfectly and were not "raining condensation into the church." After Hurricane Laura, Daigle returned to the church and had no "doubt in [his] mind" that the damage was caused by wind and not "the air-conditioning unit."

Before the case was submitted to the jury, CM orally moved and renewed a Rule 50(a) motion for judgment as a matter of law ("JMOL"), contesting that Sugartown had proved excess damages, CM's bad faith, and CM's untimely tender. The court denied both motions.

The court instructed the jury on the relevant Louisiana insurance law. No party objected to the instructions. After deliberating, the jury found that CM owed Sugartown $223,825.91 in excess damages; that CM failed to pay within 30 days of satisfactory proof of loss; and that CM acted arbitrarily, capriciously, or without probable cause. Additionally, the court awarded the following penalties under Louisiana Revised Statute § 22:1892[2]: half of

---

[2] "All insurers . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest." LA. STAT. ANN. § 22:1892(A)(1).

No. 23-30072

CM's initial payment ($2,069.39) and half of the jury award due under the policy ($111,912.96). The court also awarded Sugartown attorney's fees ($113,970.96) and costs ($50,392.96). The total award was $502,172.16.

CM moved for a new trial under Rule 59 and, alternatively, for JMOL under Rule 50(b). Its new trial motion complained about Sugartown's rebuttal witness, its use of allegedly misleading demonstrative aids, and counsel's alleged Golden Rule references. Its JMOL motion argued Sugartown's bad faith claims were supported by insufficient evidence. The district court denied both motions.

CM timely appealed.

## II.

We review properly preserved challenges to a district court's evidentiary rulings for abuse of discretion. *Reitz v. Woods*, 85 F.4th 780, 787 (5th Cir. 2023). Moreover, an error will result in reversal "only if it affected the substantial rights of the complaining party." *Ibid.*

We review denial of JMOL *de novo*, applying the same deferential standard as the district court in reviewing the jury's verdict. *Kim v. Am. Honda Motor Co.*, 86 F.4th 150, 159 (5th Cir. 2023). JMOL is proper only if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Ibid.* (citation omitted).

We review denial of a new trial motion for abuse of discretion, which occurs "only when there is an absolute absence of evidence to support the jury's verdict." *Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 653 (5th Cir. 2019) (internal quotation marks and citation omitted).

## III.

On appeal, CM challenges four trial rulings made by the district court. It also contends there was insufficient evidence to support the jury's verdict.

These errors, CM argues, call for either a new trial or JMOL. We address each argument in turn.

A.

We begin with CM's argument that the district court erred by: (1) permitting Sugartown's rebuttal witness, Daigle; (2) allowing Sugartown's demonstrative aid referencing "insurance rules"; (3) permitting Golden Rule references urging jurors to place themselves in Sugartown's position;[3] and (4) sustaining an objection to CM's questioning about ACV valuation based on the policy's "ambiguity."

We find no reversible error in any of these rulings.

1.

CM argues the district court erred in permitting Daigle as a rebuttal witness. Under Federal Rule of Civil Procedure 26, a party must provide "information about the evidence that it may present at trial other than solely for impeachment," including "each witness . . . the party expects to present and those it may call if the need arises." FED. R. CIV. P. 26(a)(3)(A), 26(a)(3)(A)(i). The court's pretrial order here forbade parties from calling witnesses, except for impeachment, unless they were disclosed "in a party's Rule 26 disclosure" or pretrial disclosures. District courts have great discretion to enforce pretrial orders, and we will not reverse these rulings "absent a clear abuse of discretion." *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990).

---

[3] CM raised these first three issues as grounds for a new trial in its post-trial Rule 59(e) motion. Because, as we discuss below, each argument is unavailing, the district court did not abuse its discretion by denying the Rule 59(e) motion. *See Apache Deepwater*, 930 F.3d at 653.

The court permitted Daigle's testimony because, under its pretrial order, Sugartown did not have to identify rebuttal witnesses. The court noted that Sugartown could not have known until trial that it would need to rebut Gonzalez's language like, "worst HVAC system I've ever seen, raining in the church." Accordingly, Sugartown was "entitled to call a rebuttal witness to rebut that [testimony]." The court restricted Daigle's testimony to his servicing the HVAC systems before and after Hurricane Laura.

According to CM, the court erred because Sugartown knew about the scope of Daigle's testimony—the HVAC dispute—long before trial. CM points to HVAC references in pretrial documents, Sugartown's opening statement, and testimony from Sugartown's witnesses. Daigle's testimony, CM says, prejudiced its defense because Sugartown had the last word before closing arguments. We see no abuse of discretion here, however.

Gonzalez never stated before trial that it was "raining" inside the church, that this was "one of the worst" HVAC systems he had seen, nor that the outdoor unit was improperly installed. Accordingly, Gonzalez's testimony included "new" facts permitting Daigle's targeted rebuttal. *See, e.g.*, *Morgan v. Com. Union Assurance Cos.*, 606 F.2d 554, 555 (5th Cir. 1979) (explaining that "[r]ebuttal" denotes "evidence introduced by a [p]laintiff to meet new facts brought out in his opponent's case in chief"); *Rodriguez v. Olin Corp.*, 780 F.2d 491, 495, 496 (5th Cir. 1986) (rebuttal allowed if defense has "raised new matters," meaning "the evidence was not fairly and adequately presented to the trier of fact before the defendant's case in chief").

Moreover, CM admits it was aware of Daigle's involvement prior to trial. So, allowing Daigle to testify caused no unfair prejudice or surprise. *See United States v. Brock*, 833 F.2d 519, 522 (5th Cir. 1987) (no prejudice from rebuttal witness unless "the [opposing party] is denied an opportunity to

present evidence on any new issue raised"); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 270 (5th Cir. 1994) (no "unfair surprise" because opposing party knew witness's identity and relevance months prior to trial); *Morfeld v. Kehm*, 803 F.2d 1452, 1455 (8th Cir. 1986) ("The primary purpose of the pretrial witness disclosure rule is to give parties notice of who will be called to testify, thereby avoiding unfair surprise or prejudice at trial.").

In sum, the court did not abuse its discretion in allowing Daigle's rebuttal testimony.

2.

CM next argues the district court erred in allowing Sugartown's demonstrative aid concerning insurance industry practices. The aid in question was titled, "Insurance claims rules and standards." The district court overruled CM's objection that the aid would mislead the jury into thinking that insurance industry standards were equivalent to legal rules.

Federal Rule of Evidence 611(a) gives courts "discretion to allow [parties] to use . . . summary charts and organizational charts." *United States v. Posada-Rios*, 158 F.3d 832, 869 (5th Cir. 1998). The court can "control the presentation of evidence" by permitting pedagogical devices and demonstrative aids intended to present a party's version of the case. *United States v. Taylor*, 210 F.3d 311, 315 (5th Cir. 2000) (citation omitted). Demonstrative aids are typically permitted "to assist the jury in evaluating the evidence, provided the jury is forewarned that the charts are not independent evidence." *Ibid.* It is generally not an abuse of discretion for a court to allow demonstrative aids when accompanied by such a limiting instruction. *See, e.g.*, *Posada-Rios*, 158 F.3d at 869.

CM contends the jury likely was confused into thinking that "insurance rules" were synonymous with "insurance laws." According to CM, this unfairly prejudiced CM because Sugartown was thereby enabled

to suggest CM broke the law. The district court disagreed. It did not think a reasonable juror would be misled into believing "insurance rules" were legal rules as opposed to industry standards. The court nonetheless gave a curative instruction that demonstrative aids were merely presented as "summaries," not evidence.

Even assuming the aid's title could have confused the jury, the district court's instruction eliminated any harm. The instruction was identical to the Fifth Circuit's Pattern Civil Jury Instruction for consideration of charts and summaries. *See* PATTERN CIV. JURY INSTR. 5TH CIR. 2.7 (2020). We have found similar curative instructions sufficient to withstand abuse of discretion review. *See, e.g.*, *Taylor*, 210 F.3d at 315; *Posada-Rios*, 158 F.3d at 869; *Intrastate Gas Gathering Co. v. Dow Chem. Co.*, 248 F.3d 1140 (5th Cir. 2001) (per curiam) (unpublished). Accordingly, we see no abuse of discretion in the district court's ruling.

### 3.

CM also argues the district court erred by permitting Golden Rule references by Sugartown's counsel. An improper "Golden Rule argument suggests that the jury place themselves in the plaintiff's position and do unto him as they would have him do unto them." *Learmonth v. Sears, Roebuck and Co.*, 631 F.3d 724, 732 (5th Cir. 2011) (internal quotation marks and citation omitted); *see also Stokes v. Delcambre*, 710 F.2d 1120, 1128 (5th Cir. 1983) (forbidding "plaintiff's counsel to explicitly request a jury to place themselves in the plaintiff's position and do unto him as they would have him do unto them").

According to CM, Sugartown's counsel made Golden Rule references throughout opening and closing statements and during some witness testimony. For example, counsel asked the jury to consider the "verdict in this case is a symbol in this community" about how important

insurance "standards are in our costal region when we're dealing with these hurricanes and insurance all the time." Arguments like these, CM says, were improper and warrant a new trial.

We review for plain error because CM never objected to any Golden Rule references at trial. So, CM must show clear or obvious error that affected its substantial rights and compromised the trial's "fairness, integrity, or public reputation." *In re Deepwater Horizon*, 824 F.3d 571, 583 (5th Cir. 2016) (per curiam). Even assuming counsel's remarks were improper, CM cannot show plain error because of the district court's curative instructions. The court told the jury to decide based solely on the evidence, not counsels' arguments. It also instructed the jury to "not let bias, prejudice, or sympathy play any part in [their] deliberations" and that "the defendant is a corporation . . . and must be treated [with individuals] as equals in the court of justice." We have ruled that similar curative instructions purged any potential prejudice from counsel's untoward remarks. *See Learmonth*, 631 F.3d at 732–33 (any "impropriety" in counsel's Golden Rule comments "was effectively cured" by instructions that the jury "not be swayed by sympathy or bias," that corporations have "equal standing in the community," and that "lawyers' arguments are not evidence"); *cf. United States v. Cochran*, 697 F.2d 600, 607 (5th Cir. 1983) (declining to "view juries as emotional slot machines" and instead reviewing effect of counsel's "hyperbolic statement with some level of confidence in [jurors'] maturity").

Accordingly, we see no plain error here.

4.

Finally, CM argues the court erred by precluding counsel's questioning as to whether the policy calculated the ACV of repairs as of August 2020 (when Hurricane Laura hit) instead of May 2021 (as Sugartown

11

argued). The court found the policy ambiguous on this point and thought CM's questioning would confuse the jury. CM denies the policy was ambiguous and contends it should have been permitted to put on evidence that the policy required an August 2020 ACV valuation, instead of May 2021. CM asks us to remand with instructions to apply a time-of-loss ACV.

We need not decide whether the district court erred in its evidentiary ruling. Even assuming it did, CM fails to show that allowing counsel's questioning about the ACV would likely have swayed the jury's verdict. *See Reitz*, 85 F.4th at 787 (evidentiary rulings subject to harmless error analysis). CM does not show that the jury would have likely applied a time-of-loss valuation had they elicited testimony to that effect. CM never even asked the court to instruct the jury on its time-of-loss interpretation. For its part, the jury considered the written policy, along with the court's unchallenged instruction on how to calculate ACV.[4] Moreover, the jury also heard CM's corporate representative, Wiggins, testify that the jury should apply a time-of-loss ACV. In light of all this evidence, including estimates prepared by both parties, the jury made its own determination of how much excess damages were due to Sugartown. CM has not shown that allowing counsel's questioning about time-of-loss ACV would likely have changed anything.

Accordingly, even assuming the court erred in its evidentiary ruling, CM has not shown that ruling had any effect on the jury's verdict.

---

[4] To calculate damages, the court told the jury it "may award damages on an [ACV] basis," which "is the reproduction cost less depreciation. Stated another way, it is the cost of duplicating the damaged property with materials of like kind and quality, less allowance for existing physical deterioration and depreciation." To award such damages, the court stated, the jury should calculate "an amount equal to the cost of restoring the property to its condition before Hurricane Laura, less any applicable deductible and any prior payments. The touchstone for determining [ACV] is to put the insured in exactly the same position as he or she is right before the loss."

B.

Next, we consider CM's argument that the jury heard insufficient evidence to find bad faith. We will not disturb a jury verdict if it is "based on substantial evidence and reasonable inferences." *Cotton Bros. Baking Co. v. Indus. Risk Insurers*, 941 F.2d 380, 390 (5th Cir. 1991) (citation omitted). We must "consider all the evidence and avoid second-guessing conflicts in the evidence or credibility determinations." *Ibid.* (cleaned up). Here, the district court denied CM's JMOL motion based on this sufficiency-of-the-evidence argument. *See* FED. R. CIV. P. 50(a)(1)(A). We "will not reverse the denial of a JMOL motion unless there is no substantial evidence to support the verdict, or if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings." *Kim*, 86 F.4th at 159 (internal quotation marks and citation omitted).

Louisiana imposes penalties on insurance companies who act in bad faith. *See* LA. STAT. ANN. § 22:1892(B)(1)(a)–(b); *Baack v. McIntosh*, 333 So. 3d 1206, 1217 (La. 2021). To assess such penalties, a plaintiff must prove "(1) an insurer has received satisfactory proof of loss, (2) the insurer fails to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause." *First Am. Bank v. First Am. Transp. Title Ins. Co.*, 759 F.3d 427, 436 (5th Cir. 2014) (citation omitted); *see also* LA. STAT. ANN. § 22:1892(B)(1)(a) (penalties accrue upon "failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor"). Satisfactory "proof of loss is a flexible requirement to advise an insurer of the facts of the claim, and . . . need not be in any formal style." *La. Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1119 (La. 2008) (internal quotation marks and citation omitted). Penalties "are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense." *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1021 (La. 2003).

"[W]hether an insurer's action was arbitrary, capricious or without probable cause is essentially a fact issue to be determined by the trial court and not to be disturbed on appeal absent manifest error." *La. Bag Co.*, 999 So. 2d at 1120.

CM contends the jury had no evidence to support a bad faith finding. Based on § 22:1892, which requires written proofs of loss "from the insured or any party in interest," CM claims such proofs could have come only from Sugartown. Thus, it claims this occurred only when Sugartown sent its statements to CM on May 25, 2021—well *after* CM's payment on November 16, 2020. Alternatively, even if proofs need not come from Sugartown, the proper trigger date should have been October 20, 2020, when it received Montano's final report. Finally, CM claims its good faith reliance on experts should have insulated it from a finding that it acted in an arbitrary and capricious manner.

Like the district court, we reject these arguments. First, CM points to no authority that § 22:1892 requires written proof of loss from the insured alone. *Cf. Sevier v. U.S. Fid. & Guar. Co.*, 497 So. 2d 1380, 1384 (La. 1986) (holding repair estimate by the insurance adjuster's contractor was satisfactory proof of loss); *J.R.A. Inc. v. Essex Ins. Co.*, 72 So. 3d 862, 881 (La. Ct. App. 2011) ("A personal inspection of an insured's property by an adjuster for the insurance company also constitutes satisfactory proof of loss."). Moreover, the district court's jury instruction on this point—to which CM offered no objection—was identical to the one approved by the Louisiana Supreme Court. *See La. Bag Co.*, 999 So. 2d at 1119. The jury heard evidence that Montano's initial written estimate on September 20, 2020 constituted a satisfactory proof of loss under this standard. Accordingly, the jury could have reasonably found that CM's payment of November 16, 2020 was untimely under the 30-day period.

Furthermore, whether CM acted arbitrarily, capriciously, or without probable cause was a fact question for the jury. *See id.* at 1120. In a "battle of the experts," a jury "must be allowed to make credibility determinations and weigh the conflicting evidence in order to decide the likely truth of a matter." *Foradori v. Harris*, 523 F.3d 477, 516 (5th Cir. 2008) (quoting *Garner v. Santoro*, 865 F.2d 629, 644 (5th Cir. 1989)). The jury found CM's conduct—even given its reliance on experts—arbitrary, capricious, or without probable cause. Seeing no "manifest error" in this finding, we cannot disturb it on appeal. *La. Bag Co.*, 999 So. 2d at 1120. Accordingly, the district court correctly denied CM's JMOL motions.

IV.

The judgment is AFFIRMED.

Print Form

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

BILL OF COSTS

**NOTE:** The Bill of Costs is due in this office *within 14 days from the date of the opinion, See* FED. R. APP. P. & 5ᵀᴴ CIR. R. 39. Untimely bills of costs must be accompanied by a separate motion to file out of time, which the court may deny.

Sugartown United Pentecostal Church, Inc. v. Church Mutual Insurance Company   No. 23-30072

The Clerk is requested to tax the following costs against: Church Mutual Insurance Company

| COSTS TAXABLE UNDER Fed. R. App. P. & 5th Cir. R. 39 | REQUESTED | | | | ALLOWED (If different from amount requested) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Copies | Pages Per Copy | Cost per Page* | Total Cost | No. of Documents | Pages per Document | Cost per Page* | Total Cost |
| Docket Fee ($450.00) | | | | | | | | |
| Appendix or Record Excerpts | | | | | | | | |
| Appellant's Brief | | | | | | | | |
| Appellee's Brief | 7 | 67 | 0.15 | 70.35 | | | | |
| Appellant's Reply Brief | | | | | | | | |
| Other: | | | | | | | | |
| | | | Total $ | 70.35 | | | Costs are taxed in the amount of $ | |

Costs are hereby taxed in the amount of $ 70.35 this 12th day of February, 2024.

LYLE W. CAYCE, CLERK

State of
County of Harris

By *Allison Lopez*
Deputy Clerk

I Nishi Vimal Kothari, do hereby swear under penalty of perjury that the services for which fees have been charged were incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this Bill of Costs was this day mailed to opposing counsel, with postage fully prepaid thereon. This 19th day of January, 2024.

(Signature)

*SEE REVERSE SIDE FOR RULES
GOVERNING TAXATION OF COSTS

Attorney for Sugartown United Pentecostal Church, Inc.